OPINION OF THE COURT
David B. Cohen, J.
Introduction and Procedural History
This nonpayment proceeding was commenced by filing the notice of petition and petition on March 7, 2007 following the termination of Section 8 payments on behalf of respondent, Charles Williams, by the Department of Housing Preservation and Development (HPD) and before the start of payments by the New York City Housing Authority (NYCHA). This proceeding seeks unpaid rent for November 2006 through February 2007. Respondent moved for summary judgment based on petitioner’s failure to comply with the second partial consent decree in Williams v New York City Hous. Auth. (No. 81 Civ 1801 [US Dist Ct, SD NY 1995] [Williams Consent Decree] requiring petitioner to certify to NYCHA prior to commencing this proceeding.
Factual Background
For some 16 years prior to the commencement of this proceeding respondent resided in apartment 5E at 5 West 91st Street, New York, New York 10024, and, for at least some of that time, respondent’s tenancy was subsidized under a Section 8 program administered by HPD. Assistance from HPD came to an end on or about March 24, 2006 when the building was privatized and withdrawn from the Mitchell-Lama Program; all tenants in the HPD Section 8 program were to be transferred to Section 8 subsidies administered by NYCHA. To this effect petitioner’s agent executed the Housing Assistance Program (HAP) contract on or about February 20, 2006 after which it was taken to NYCHA to be countersigned. NYCHA countersigned the HAP contract over a year later on May 2, 2007.
On February 15, 2007, respondent was issued a Housing Choice Voucher Program voucher indicating his eligibility for the NYCHA program. As part of the process that NYCHA employs before signing the HAP contract, an inspector was sent to the premises to make sure that it complied with all housing *849 quality standards (HQS).[1] By a letter dated March 9, 2007, NYCHA notified petitioner that the building had not passed an inspection conducted on March 6, 2007 due to a faulty elevator on the premises. There is no explanation in the record for the inordinate delay by NYCHA in issuing the voucher, scheduling the inspection or countersigning the HAP contract. NYCHA has begun paying the subsidy on behalf of respondent starting in June 2007 and paid retroactively to cover May 2007.
Conclusions of Law
Summary Judgment
Under CPLR 3212, a motion for summary judgment shall be denied if, following presentation of the relevant facts, there remains sufficient controversy over any material issue of fact sufficient to require a trial. The party seeking summary judgment must show upon the evidence that no material issue of fact remains for trial (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; see also Gonzalez v 98 Mag Leasing Corp., 95 NY2d 124, 129 [2000]). Conclusory assertions are not sufficient to defeat a motion for summary judgment (McGahee v Kennedy, 48 NY2d 832, 834 [1979]). Where a party has met their prima facie burden to establish entitlement to judgment as a matter of law, the burden shifts to the opposing party to “produce evidentiary proof in admissible form establishing the existence of material questions of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 326-327 [1986]).
Williams Consent Decree
The Williams Consent Decree requires landlords of tenants receiving Section 8 benefits to notify the Section 8 provider by certification of the reasons for seeking to evict the covered tenant (Williams v New York City Hous. Auth., 1994 US Dist LEXIS 9058, *7, 1994 WL 323634, *3 [SD NY, July 5, 1994]). Should the nonpayment proceeding seek to recover arrears of subsidy payments from the Section 8 provider, or if the Section 8 provider did not respond to the certification within the allowed time, the provider must be named as a party to the proceeding (Williams v New York City Hous. Auth., 1994 US Dist LEXIS 9058, *8, 1994 WL 323634, *3). Failure to name NYCHA as a party, or to certify and gain authorization for a nonpayment proceeding, is fatal to *850 the suit and requires its dismissal (Jennie Realty Co. v Sandberg, 125 Misc 2d 28 [App Term, 1st Dept 1984] [failure to certify intent and grounds to NYCHA in a nonpayment proceeding is fatal and the proceeding will be dismissed]).
The memorandum decisions of Judge Robert J. Ward in Williams v New York City Hous. Auth. contain the recurring theme that a Section 8 tenant should not be held liable, through no fault of his or her own, for the failure of the Section 8 provider to pay the subsidy portion of the rent due to a dispute between the provider and the landlord (see 1994 US Dist LEXIS 9058, *3, 1994 WL 323634, *1; 1994 US Dist LEXIS 13870, *2 n, 1994 WL 533572, *1 n [SD NY, Sept. 29, 1994]). The HAP contract is an “independent contract” between the landlord and the Section 8 provider to which the tenant is not a party (Park Prop. Dev. v Santos, 1 Misc 3d 16, 17 [App Term, 2d & 11th Jud Dists 2003]). Thus any failure on the part of NYCHA to countersign the HAP contract is outside of the tenant’s control.[2]
In this case, respondent was the beneficiary of an HPD Section 8 subsidy until the sale and privatization of the premises in which he lives. At the time of sale, all parties contemplated a transition from the HPD Section 8 program to the NYCHA Section 8 program that would result in the continuation of Section 8 payments on behalf of respondent. The only reason this transfer from one Section 8 provider to the other did not happen smoothly is the unexplained delay by NYCHA in issuing a voucher and the further delay in countersigning the HAP contract because the premises had a faulty elevator and, thus, failed to meet the HQS. Failure to pass the HQS inspection fur *851 ther delayed the start of NYCHA’s subsidy payments on behalf of respondent.[3]
There is also a portion of the rent sought by petitioner for the month of February 2007 where NYCHA might have provided a subsidy because of the voucher issued on February 15, 2007. Failure to obtain this subsidy for the second half of February 2007 resulted from the building’s failure to pass the HQS inspection and was, also, not within respondent’s control.[4]
Finally, respondent did not move into the apartment prematurely without securing coverage from a Section 8 provider as he was already in the apartment when his coverage was terminated through no fault of his own.
Both petitioner and respondent anticipated that respondent would have a seamless transition from enrollment in an HPD Section 8 subsidy program to a NYCHA Section 8 subsidy program. Petitioner knew of these objectives and joined in the effort to achieve them; however, a confluence of events completely beyond respondent’s control collectively thwarted this outcome for over one year. Further, NYCHA had issued a voucher to respondent prior to the commencement of this proceeding. Respondent’s circumstance is exactly the type of situation that the Williams Consent Decree was intended to remedy. In these instances, involving NYCHA in the litigation via the certification process could not be dispensed with. Thus, petitioner was required to certify to NYCHA its intent to commence a nonpayment proceeding (Williams v New York City Hous. Auth., 81 Civ 1801 [SD NY 1995]). Because petitioner did not certify to NYCHA its intent to commence this *852 proceeding it must be dismissed (Jennie Realty Co. v Sandberg, 125 Misc 2d 28 [1984]).
Conclusion
Respondent’s motion for summary judgment is granted and the proceeding is dismissed.

. Satisfaction of the HQS is a prerequisite for NYCHA’s countersigning the HAP contract (see reply affirmation, exhibit A).

. Illustrative of this point is the applicability of the certification process to holdover proceedings “which arise out of or are related to the termination or suspension of the Section 8 subsidy” (1994 US Dist LEXIS 13870, *1, 1994 WL 533572,*1). The certification process applies so as to prevent “the landlord [from] avoiding] . . . the certification process in evicting his tenant. Obviously, such an inequitable result would defeat the purpose of the certification process approved ... in the Second Partial Consent Judgment” (1994 US Dist LEXIS 13870, *3, 1994 WL 533572, *1-2). The certification process in the holdover context is employed to “ensure, among other things, that plaintiff-tenants would not be evicted from their Section 8 apartments due to disputes between NYCHA and their landlords” (1994 US Dist LEXIS 13870, *2, 1994 WL 533572,*1).

. Petitioner, even with a signed HAP contract, might not have received any rent subsidy payments from NYCHA because of the faulty elevator. Under the HAP contract failure on the part of the landlord to meet the HQS may be remedied by termination of the subsidy payments as well as termination of the HAP contract (see affirmation in opposition, exhibit A, HAP contract at 2). Termination of the HAP also terminates the lease (id. at 5). Suspension or termination of Section 8 payments as well as cancellation of the HAP contract are circumstances in which the Williams Consent Decree requires the landlord to notify NYCHA of its intent to initiate a nonpayment proceeding (see 1994 US Dist LEXIS 13870, 1994 WL 533572; see also Jennie Realty Co. v Sandberg, 125 Misc 2d 28 [1984]).

. Petitioner contends that in cases such as this, where a voucher has issued but a HAP contract has not been signed, NYCHA does not pay back subsidies retroactively to the issuance of the voucher. It is true that NYCHA may decide not to make subsidy payments retroactively to February 2007 and in addition decide to allow a nonpayment proceeding to go forward. However, NYCHA could only make these determinations upon receiving a certification from the petitioner.